**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

MIGUEL ANGEL MORALES, :
: Civil Action No. 08-2969 (JBS)
      Plaintiff, :
:
      v. : **OPINION**
:
WARDEN GRONDOLSKY, :
:
      Defendant. :

**APPEARANCES:**

Plaintiff pro se
Miguel Angel Morales
F.C.I. Fort Dix
P.O. Box 38
Fort Dix, NJ 08640

**SIMANDLE**, District Judge

    Plaintiff Miguel Angel Morales, a prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, seeks to bring this civil action in forma pauperis, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, alleging violations of his constitutional rights. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Amended Complaint.

At this time, the Court must review the Amended Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I. BACKGROUND

The following factual allegations are taken from Plaintiff's Amended Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that he was placed in Administrative Segregation on September 24, 2007, and was issued a statement that he was being placed in Administrative Segregation "pending an investigation of a violation of bureau regulations." Plaintiff remained in Administrative Segregation for ten days, from September 24, 2007, until October 3, 2007, when he was released upon a finding that there was insufficient evidence to charge Plaintiff with any violations.

Plaintiff alleges that during his confinement in Administrative Segregation he "lost" over $120 dollars worth of commissary items,[1] some clothing, and a hair and beard trimmer. Plaintiff also lost his prison job as a Unit Orderly and the preferred housing quarters associated with that job.

---

[1] Plaintiff does not allege that Defendant Warden Grondolsky personally took or directed the taking of his personal property.

Plaintiff alleges that he has exhausted his administrative remedies.

Plaintiff asserts that these events were undertaken in violation of various federal regulations regarding the conduct of disciplinary investigations and prison jobs. He asserts that these events deprived him of liberty and property without due process, in violation of the Fifth Amendment to the Constitution of the United States.[2]

Plaintiff seeks declaratory and injunctive relief, including the return of his personal property and restoration of his prison job and preferred housing assignment, and all other appropriate relief.[3] The only named defendant is Warden Grondolsky.

## II. STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary

---

[2] Plaintiff's allegation that he was deprived of his rights under the Fourteenth Amendment is without foundation, as the Fourteenth Amendment controls state, not federal, action.

[3] Plaintiff also asks for an injunction against any future retaliation action.

Plaintiff lacks standing to bring this claim for prospective injunctive relief. The allegations do not establish any retaliation by the Warden and do not suggest that Plaintiff faces a real and immediate threat of future injury arising out of the challenged conduct. See, e.g., City of Los Angeles v. Lyons, 461 U.S. 95 (1983); Brown v. Fauver, 819 F.2d 395, 400 (3d Cir. 1987). Accordingly, the claim for prospective injunctive relief will be dismissed with prejudice.

relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

A complaint must plead facts sufficient at least to "suggest" a basis for liability. Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

4

> Factual allegations must be enough to raise a right to relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted). See also Morse v. Lower Merion School Dist., 132 F.3d at 906 (a court need not credit a pro se plaintiff's "bald assertions" or "legal conclusions").

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III. ANALYSIS

Plaintiff alleges that he was deprived of a liberty interest without due process when he was placed in Administrative Segregation for ten days pending an investigation and that he was deprived of property and/or liberty interests without due process when he "lost" his personal property, his prison job, and his preferred housing assignment.

A liberty or property interest protected by the Due Process Clause may arise from either of two sources: from the Due Process Clause itself or from statute or regulation. See Hewitt v.

5

Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).

With respect to convicted and sentenced prisoners, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976), quoted in Hewitt, 459 U.S. at 468 and Sandin v. Conner, 515 U.S. 472, 480 (1995). Cf. Washington v. Harper, 494 U.S. 210, 221-22 (1990)(prisoner has liberty interest under the Due Process Clause in freedom from involuntary administration of psychotropic drugs); Vitek v. Jones, 445 U.S. 480, 493-94 (1980)(prisoner has liberty interest under the Due Process Clause in freedom from involuntary transfer to state mental hospital coupled with mandatory treatment for mental illness, a punishment carrying "stigmatizing consequences" and "qualitatively different" from punishment characteristically suffered by one convicted of a crime).

Governments, however, by statute or regulation, may confer on prisoners liberty interests that are protected by the Due Process Clause. "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the

6

Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (finding that disciplinary segregation conditions which effectively mirrored those of administrative segregation and protective custody were not "atypical and significant hardships" in which a state conceivably might create liberty interest).

"Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." Sandin, 515 U.S. at 485 (upholding prisoner's sentence of 30 days' disciplinary segregation following a hearing at which he was not permitted to produce witnesses).

None of the losses enumerated by Plaintiff rises to the level of an "atypical and significant hardship ... in relation to the ordinary incidents of prison life," and, thus, despite the existence of regulations guiding prison administration, none gives rise to procedural due process concerns. Placement in Administrative Segregation for a period of ten days during an investigation of a possible violation, without more, does not amount to an "atypical and significant hardship." See Griffin v. Vaughn, 112 F.3d 703, 708-09 (3d Cir. 1997) (a 15-month confinement in administrative custody did not impose "atypical and significant hardship," even in the face of state regulation

7

requiring release to the general population after 20 days in the absence of a misconduct charge). An inmate has no liberty or property interest in a particular prison job, or any prison job. See James v. Quinlan, 866 F.2d 627, 629-30 (3d Cir.), cert. denied, 493 U.S. 870 (1989); Bryan v. Werner, 516 F.2d 233, 240 (3d Cir. 1975). Nor does a prisoner have a liberty interest in a particular housing assignment within a prison system. See McKune v. Lile, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); Hewitt v. Helms, 459 U.S. 460 (no liberty interest in remaining in general population rather than administrative segregation); Asquith, 186 F.3d at 411-12 (return to prison from halfway house did not impose "atypical and significant hardship" on prisoner and, thus, did not deprive him of protected liberty interest); Barr v. DiGuglielmo, 2008 WL 2786424 (E.D. Pa. 2008) (no liberty interest in being housed in particular wing of prison). But see Wilkinson v. Austin, 545 U.S. 209 (2005) (Ohio prisoners have state-created liberty interest in avoiding assignment to "supermax" prison).

With respect to Plaintiff's claim that his personal property was "lost" as a result of his placement in Administrative Segregation, an unauthorized deprivation of property by a government actor, whether intentional or negligent, does not constitute a violation of the procedural requirements of the Due

8

Process Clause of the Fifth Amendment if a meaningful post-deprivation remedy for the loss is available.[4]  Hudson v. Palmer, 468 U.S. 517, 530-36 (1984) (decided under Due Process Clause of Fourteenth Amendment); Parratt v. Taylor, 451 U.S. 527, 543-44 (1981) (same), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 328 (1986).  The U.S. Bureau of Prisons grievance procedure[5] provides just such an adequate post-

---

[4] In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 389 (1971), the Supreme Court held that a violation of the Fourth Amendment by a federal agent acting under color of his authority gives rise to a cause of action against that agent, individually, for damages.  Relying upon Bivens, several lower federal courts have implied a damages cause of action against federal officers, under the Due Process Clause of the Fifth Amendment, for claims by federal pre-trial detainees alleging inadequate medical care or unconstitutional conditions of confinement.  See, e.g., Lyons v. U.S. Marshals, 840 F.2d 202 (3d Cir. 1988); Magluta v. Samples, 375 F.3d 1269 (11th Cir. 2004); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978), cert. denied, 446 U.S. 928 (1980).

  In those settings where Bivens applies, "the implied cause of action is the 'federal analog to suits brought against state officials under ... 42 U.S.C. § 1983.'" Ashcroft v. Iqbal, 2009 WL 1361536, *11 (U.S. May 18, 2009) (citations omitted).  Thus, it is appropriate here to analogize to § 1983 cases decided under the Due Process Clause of the Fourteenth Amendment.  In addition, there is no vicarious liability in Bivens actions; "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id.  On this ground alone, Plaintiff's allegation that his property was "lost" is not sufficient to state a claim that Defendant Warden Grondolsky personally deprived Plaintiff of property without due process.

[5] The BOP Administrative Remedy Program is a three-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement."  28 C.F.R. § 542.10.  An inmate must initially attempt to informally resolve the issue with

deprivation remedy, even if Plaintiff's personal property was confiscated pursuant to an established policy. See, e.g., Barr v. Knauer, 2009 WL 962684 (3d Cir. April 10, 2009) (approving post-deprivation grievance remedy following confiscation of electric razor); Tillman v. Lebanon County Corr. Fac., 221 F.3d 410, 422 (3d Cir. 2000) (prison grievance procedure satisfies procedural due process concerns where state must take quick action or where it is impractical to provide meaningful predeprivation process). The existence of this post-deprivation remedy forecloses any due process claim, even if an inmate is dissatisfied with the result of the process. Iseley v. Horn, 1996 WL 510090, at *6 (E.D. Pa. Sept. 3, 1996).[6]

---

institutional staff. 28 C.F.R. § 542.13(a). If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted. 28 C.F.R. § 542.14. An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response. 28 C.F.R. § 542.15(a). The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response. Id. Appeal to the General Counsel is the final administrative appeal. Id. If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

[6] This Court does not construe the Complaint as asserting a claim under the Federal Tort Claims Act, see 28 U.S.C. §§ 1346, 2671 et seq., which authorizes claims against the United States, "for money damages ... for injury or loss of property ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or

Plaintiff has failed to state a claim for deprivation of liberty or property interests without due process.

IV. CONCLUSION

For the reasons set forth above, the Amended Complaint shall be dismissed with prejudice, pursuant to 42 U.S.C. § 1997e(c) and 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim. It does not appear that Plaintiff could cure the deficiencies of the Amended Complaint by further amendment. An appropriate order follows.

**s/ Jerome B. Simandle**
Jerome B. Simandle
United States District Judge

Dated: **May 29, 2009**

---

employment." 28 U.S.C. § 1346(b)(1). The FTCA excepts from this waiver of sovereign immunity certain categories of claims, including claims "arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer." 28 U.S.C. § 2680(c) (emphasis added). Resolving a split within the lower federal courts, the Supreme Court has recently held that this exception bars a federal prisoner's FTCA claim for loss of property by Federal Bureau of Prisons officers. See Ali v. Federal Bureau of Prisons, 552 U.S. 214 (2008).

This Court expresses no opinion as to whether Plaintiff may be able to pursue an administrative tort claim with the Bureau of Prisons.